UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Janet Haigler, as Trustee of the ) <br> Bankruptcy Estate of Allyson Bolden, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SharkNinja Operating LLC, ) <br> ) <br> Defendant ) | Case No. 23 C 326 <br><br> Hon. Jorge L. Alonso |

**Memorandum Opinion and Order**

Before the Court are Defendant SharkNinja Operating LLC's motion for summary judgment against Plaintiff Janet Haigler, motion to exclude the opinions of Dr. Wade Lanning, and related motions to seal. For the following reasons, the Court denies Defendant's motion to exclude [47] and grants in part and denies in part Defendant's motion for summary judgment [43]. Defendant's motion for summary judgment is granted as to Bolden's claims premised on a theory of manufacturing defect but is otherwise denied. The Court grants Defendant's unopposed motions to seal for the reasons set forth therein. [50] [54] The parties shall file a joint status report by March 17, 2025 providing proposed pre-trial deadlines and trial dates and informing the Court whether the parties wish for a settlement conference to be scheduled.

**Background**

Allyson Bolden initiated this suit against Defendant alleging that she was injured while using its Ninja Intellisense Kitchen System. However, as discussed in more detail below, in March 2024 the Trustee of Bolden's bankruptcy estate, Haigler, retained this lawsuit for the benefit of Bolden's creditors. For clarity, the Court uses the names Haigler and Bolden when necessary to

1

delineate between the actions of the two and uses the term Plaintiff with respect to Haigler's arguments for purposes of the present motions.

Bolden injured her hand while using a Ninja Intellisense Kitchen System, which consists of a motor base and several attachments, including a food-processor attachment. To use the food-processor attachment, the user must install the food-processor bowl onto the motor base, the blade assembly into the bowl, and the food-processor lid onto the bowl. The lid becomes securely attached to the bowl by aligning arrows on each component and then lowering the lid handle, which locks the lid onto the bowl. To remove the lid, the user presses the release button on the lid, which raises the handle on the lid to an upright position. After this, the lid is removed by vertically lifting the handle.

Bolden was injured when trying to remove the food-processor lid from the bowl. When she powered on the base, the base did not register the food-processor attachment. In an attempt to remedy this issue, Bolden unplugged the base and removed the food-processor attachment, placing it on the counter. Bolden tried to remove the lid by pressing the release button. However, when she pressed the button, the handle released by approximately an inch, rather than completely. Bolden attempted to push the handle to the upright position, but it was locked.

Bolden then tried to remove the lid by holding the food processor in her left hand while grabbing the lid handle and the edges of the lid with her right hand. Bolden pulled the lid once with considerable effort to no avail. She pulled the lid a second time, again with considerable effort, which removed the lid and caused the food-processor blade to eject. Bolden reached for the blade to protect her nearby children, and the blade injured her hand.

Before Bolden read the food processor's instructions and warnings, she understood its blades were sharp. When unpackaging the product, Bolden understood that the blades were not

2

permanently attached to the bowl. After reading the instructions and warnings, she knew that the blades were not locked into place within the bowl.

Bolden underwent two surgeries and occupational therapy to treat her injuries. After the second surgery, Bolden was advised that she did not require further occupational therapy and was prescribed home hand-strengthening exercises.

On April 18, 2022, Bolden filed for Chapter 7 bankruptcy. At the time, she had already retained counsel for this lawsuit and was gathering medical documentation in preparation for litigation. In Bolden's bankruptcy petition, she listed two contingent and unliquidated claims: a medical malpractice suit against the doctor who performed her first surgery, to which she assigned a value of unknown and a "[p]otential claim against Ninja Blender" with a value of $0. (ECF No. 53-11 at 8.) Bolden was questioned about her claim against Defendant at a meeting of her creditors and explained that according to her attorneys, she had a case against Defendant concerning the same injury as her medical malpractice case, and both cases asserted personal injury. On July 6, 2022, Bolden's bankruptcy trustee, Haigler, issued a certificate of discharge for certain of Bolden's debts. On October 21, 2022, Bolden filed suit against Defendant.

On March 6, 2024, the Court granted Defendant's motion to assert judicial estoppel as an affirmative defense against Bolden. Two days later, Bolden reopened her bankruptcy proceedings and amended her schedule to change the value of her claim for this litigation to unknown. This suit was subsequently retained for the benefit of Bolden's estate, and Haigler as the bankruptcy trustee was substituted as the Plaintiff. Defendant now moves to exclude the opinions of Plaintiff's expert Dr. Lanning regarding whether the food processor was unreasonably dangerous and whether the food processor's condition or its lack of warnings caused Bolden's injuries. Defendant also moves for summary judgment on Bolden's claims.

**Legal Standard**

"The admission of expert testimony is governed by Federal Rule of Evidence 702 and the principles outlined in *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)]." *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011). Federal Rule of Evidence 702 provides that expert testimony is admissible if "the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Put another way, the Court "must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (quoting *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010)). "If the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health &*

*Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the evidentiary record and views all the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Further, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Id.* at 248.

### **Defendant's Motion to Exclude the Opinions of Dr. Lanning**

Defendant seeks to exclude the opinions of Plaintiff's expert Dr. Wade Lanning on the grounds that he is not qualified to offer them, they are unreliable, and they are irrelevant. The Court disagrees with Defendant and denies Defendant's motion to exclude.

**A.      Summary of Opinions**

Plaintiff retained Dr. Lanning to analyze the design of the food-processor attachment that injured Bolden. Dr. Lanning obtained the food processor from Bolden and conducted a nondestructive examination of the food processor. (ECF No. 48-1 at 3.) He first analyzed the food processor and base and was unable to identify any damage or other conditions that would affect the functioning of the food processor. (*Id.*)

Dr. Lanning also purchased a new food-processor bowl, lid, and blade, and verified that that they were identical in form and function to the one Bolden used. (*Id.* at 8.) Considering Bolden's testimony, he ruled out potential alternative causes for the food processor not powering

5

on and was left with the explanation that the motor base was not engaged because the lid was not installed in a manner such that it pressed on the tab bowl handle. (*Id.* at 9.) Dr. Lanning then attempted to identify scenarios where the handle could be locked into place without engagement of the tab bowl handle. (*Id.*)

Through his testing, Dr. Lanning found that the lid could be attached to the bowl in an unaligned fashion and lock into place without pressing the bowl handle tab. (*Id.*) In such a situation, the lid would jam. (*Id.*) He found that this jamming was consistent with the scenario Bolden encountered. (*Id.* at 10.) Further, Bolden's bowl had scratches in the location where the jamming occurred, which would not occur in normal operation of the food processor. (*Id.*) From this, he concluded that the most likely cause of Bolden's food processor not functioning as intended was because of a jam and that the jam caused Bolden's injuries. (*Id.*)

Dr. Lanning then conducted a safety engineering analysis of the food processor. (*Id.* at 11.) He reviewed the product manual and the product and found no warnings related to the hazards or possibility of lid jamming. (*Id.* at 12.) Dr. Lanning then opined regarding the engineering controls of the food processor. (*Id.* at 14.) He opined that controls which guard against a hazard are more effective than instructions and warnings because they do not require user intervention to be effective. (*Id.*) He explained that the bowl was flexible such that the lid could be installed in any orientation, and the lug and notch on the food processor were too shallow to prevent such installation. (*Id.*) This meant that there was not an effective means to prevent jamming of the lid. (*Id.* at 14–15.) Dr. Lanning found that the lid could be placed on the bowl in any position, including positions which led to the lid becoming jammed. (*Id.* at 16.) Despite the product definition providing a poka-yoke[1] criterion of 150 kgf to overcome the incorrect installation of the base, the

---

1 Poka-yoke is an engineering control to design products to guard against inadvertent mistakes. (ECF No. 48-1 at 15.)

lid could be installed out of alignment at 6.8 kgf and in a manner that jammed at 14.3 kgf, which Dr. Lanning could replicate with his non-dominant hand. (*Id.*)

Dr. Lanning went on to opine that the circular lid of the food processor contributed to the jamming because it allowed the lid to be placed onto the bowl at any orientation. (*Id.*) He explained that the blender attachment for the same product has a square lid and could not experience the same problem due to the limitation of the number of ways it could be placed on the pitcher. (*Id.* at 15–16.) He further explained that the food-processor lid could be altered to fit only in one orientation, which would avoid the potential of jamming through enlargement of the alignment lug and noted that the Defendant offers a new product which corrects this flaw. (*Id.*) He further explained that other Ninja and competitor products use a twist-to-lock design which prevent this type of jamming, and which would be compatible with the motor base and not render the product more expensive. (*Id.* at 16–17.)

Dr. Lanning ultimately concluded that Bolden was injured while attempting to remove a jammed lid, the lack of warnings and functions preventing lid-jamming proximately caused Bolden's injuries, and the lack of safeguards and the availability of safer alternative designs made the food processor unreasonably dangerous. (*Id.* at 18–19.)

### B. Qualifications

Defendant does not dispute Dr. Lanning's qualifications to offer the opinions in his report regarding the alleged design defect. Nonetheless, the Court has analyzed Dr. Lanning's qualifications and holds that he is sufficiently qualified to opine regarding the design of food processors.[2]

---

2 Dr. Lanning has a Ph.D in materials science from the Georgia Institute of Technology, an M.S. in materials science from Penn State, and a B.S. in materials science and engineering from Boise State. (*Id.* at 2.) Dr. Lanning has conducted research and taught classes concerning the mechanical properties of materials. (*Id.*) Dr. Lanning has also

Defendant instead argues that Dr. Lanning is unqualified to offer an opinion regarding the adequacy of the food-processor's warnings because he is a materials scientist and is not otherwise qualified to opine on warnings relating to food processors. Plaintiff responds that *Daubert* does not require particular credentials for an expert witness and that Dr. Lanning's qualifications provide him with an adequate foundation to opine regarding warnings.

The Court assesses Dr. Lanning's credentials to determine if he possesses "relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury." *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). The ultimate question is whether the expert's "qualifications provide a foundation for [him] to answer a specific question." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). Sufficient qualifications can be obtained through work experience and training. *United States v. Parkhurst*, 865 F.3d 509, 516 (7th Cir. 2017); *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). An expert's lack of specialization typically goes to weight, not admissibility. *Anderson v. Raymond Corp.*, 61 F.4th 505, 509 (7th Cir. 2023).

Dr. Lanning has sufficient qualifications to offer opinions regarding food-processor warnings through his work experience. At Dr. Lanning's current employer, engineering consulting firm ARCCA, he has assessed warnings relating to consumer products. (ECF No. 48-5 at 3.) As a safety engineer, he has specifically analyzed how "warnings were used, or should have been used, to manage a hazard." (*Id.* at 2.) And Dr. Lanning's safety engineering analysis experience includes food-processing machinery specifically. (ECF No. 48-1 at 2.) This is sufficient to conclude that

---

worked in a lab and as a consultant on issues relating to failure analysis, materials identification and testing, and new material development. (*Id.*) In Dr. Lanning's current role at ARCCA, he "specialize[s] in failure analysis, safety, accident investigation, and cases involving degradation and failure of metal, ceramic, and polymer components." (*Id.*) He further has experience with safety engineering analysis with food-processing machinery and consumer kitchen appliances. (*Id.*)

8

Dr. Lanning has an adequate foundation, by a preponderance of the evidence, to opine regarding warnings related to food processors. As such, Defendant's motion to exclude Dr. Lanning's warning opinion based on his qualifications is denied.

### C. Reliability

Defendant argues that certain of Dr. Lanning's opinions are unreliable. Reliability concerns "the soundness and care with which the expert arrived at her opinion." *Raymond*, 61 F.4th at 510 (quotations omitted). Rule 702 provides certain factors to assess reliability, including "(1) whether the testimony is based on sufficient facts or data; (2) whether the testimony is the product of reliable principles and methods; and (3) whether the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." *In re Surescripts Antitrust Litig.*, No. 19-CV-06627, 2024 WL 4851539, at *4 (N.D. Ill. Nov. 21, 2024) (citations omitted) (citing Fed. R. Civ. P. 702). While certain criteria guide courts in their reliability analysis, a district court possesses "broad latitude when it decides *how* to determine reliability" based on the particular facts of the case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150, 158 (1999) (emphasis in original). Reliability can be established through either scientific methodology or the expert's professional experience. *Artis v. Santos*, 95 F.4th 518, 526 (7th Cir. 2024). An expert's opinions cannot be "based on subjective belief or speculation." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). An opinion should be excluded as unreliable when "there is simply too great an analytical gap between the data and the opinion proffered." *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 832 (7th Cir. 2015) (quotation omitted).

### i. Force Testing of Jamming

Defendant argues that Dr. Lanning's design defect opinion is unreliable because he did not test the amount of force required to assemble the lid in a manner that leads to jamming. A cursory

9

review of Dr. Lanning's report shows that Defendant is mistaken. Dr. Lanning's report states that "[i]nstalling the lid out of alignment did not take significantly more effort than installing it when perfectly aligned." (ECF No. 48-1 at 9.) And as discussed above, Dr. Lanning measured the force to install the lid in both a slightly misaligned fashion and such that it would jam. (*Id.* at 15.) Therefore, the Court will not exclude Dr. Lanning's opinion on this ground.

Perhaps noticing this oversight, Defendant changes its argument in reply, arguing that Dr. Lanning's design defect opinion is unreliable because it lacks foundation. *United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014) ("The evidence the expert relies on has to provide an adequate foundation for the expert's opinion."). Specifically, it argues that he has not adequately defined the term "significant effort and force" and he has not tested the force needed to install and lock the lid in the correct orientation. Because Plaintiff did not have the opportunity to respond to this argument, it is waived. *See, e.g.*, *Sharma v. Rhino Holdings Aurora, LLC*, No. 24 C 2365, 2025 WL 327779, at *4 (N.D. Ill. Jan. 29, 2025).

However, even reaching the merits the Court would hold that Dr. Lanning has an adequate foundation here. Dr. Lanning reached his conclusion that the lid could be installed incorrectly without significant effort or force because it could be installed with less force than the poka-yoke criterion for base assembly, provided the force required for such an assembly, and he was able to do so with his non-dominant hand. (ECF No. 48-1 at 15.) It is unclear to the Court why a comparison to the force needed to align the lid correctly would be needed for Dr. Lanning's opinion to be reliable. He did not opine that the force needed for incorrect installation was similar to that required for correct installation, only that incorrect installation could be done without "significant effort or force." While reference to the force needed to install the lid correctly may be a helpful comparison, it is not required to show that incorrect installation could be done without

10

significant effort or force. While the Defendant may prefer more foundation, the foundation established is sufficient, and its criticisms go to weight, not admissibility.

### ii. Force Testing of Lid Removal

Next, Defendant argues that Dr. Lanning's opinion on causation should be excluded because he did no testing on how much force was required to remove a jammed lid and whether that force would cause an ejection of the blade from the bowl of the food processor. Plaintiff does not contest that Dr. Lanning performed no testing on the amount of force required to remove the lid from the food processor once the lid had become jammed. Instead, Plaintiff argues that had the lid not jammed Ms. Bolden would have been able to remove the lid properly, without significant effort or force, and the blade would not have ejected.

Dr. Lanning performed testing regarding the amount of force required to jam the lid on the force processor and his testing revealed that such jams caused the food-processor lid to not release as typical. (ECF No. 48-1 at 10, 15.) Further, he analyzed the scratching on Ms. Bolden's attachment and determined it indicated her food processor had jammed. (*Id.* at 10.) In addition, he ruled out other alternative reasons why the base would not power on, outside of jamming. (*Id.* at 9–10.) His opinions regarding the cause of the accident were tied to his methods, not mere speculation, and support his causation opinion because they show that the ordinary release mechanism was not functioning as normal, necessitating Bolden's removal of the lid outside of the ordinary method for doing so. Further, Dr. Lanning ruled out other serious alternative causes of the accident. The Court concludes that Dr. Lanning's methodology is sufficiently reliable without the testing of the force required to remove the lid.[3] Accordingly, the Court denies

---

3 Defendant's sole citation to *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 874 (7th Cir. 2021) is inapposite. There, the expert relied on mere speculation that an accident was caused by carrying too much weight, but the expert did not know whether the actual weight carried or whether the weight carried exceeded the appropriate capacity, and the

11

Defendant's motion to exclude on this basis.

### iii. Alternative Designs

Defendant next argues that Dr. Lanning's opinion that the existence of alternative designs renders the processor unreasonably dangerous is unreliable because it is not supported by testing of alternative designs or any other method of research. While it is true that "[c]ourts value the testing of alternative designs to form the basis of opinions offered about them in product defects cases," "[t]esting a theory provides but one measure of its reliability" and is not required. *Schuring v. Cottrell, Inc.*, 244 F. Supp. 3d 721, 730 (N.D. Ill. 2017). Here, the Court is not convinced that the lack of testing undermines the reliability of Dr. Lanning's opinions.

For instance, Dr. Lanning explains why the use of a twist-to-lock lid, square lid, or a larger lug would prevent the jamming experienced by Bolden and provides evidence that a design change would not be cost-prohibitive. (ECF No. 48-1 at 15–18.) The Court concludes that under the facts of this case the alternative-design opinions are reliable without testing because certain of the alternative designs already exist in the industry, the alternative designs are not complex, and Dr. Lanning's understanding of the differences through professional experience provides the foundation required for his testimony to be reliable. *Raymond*, 61 F.4th at 510 (holding failure to test an alternative design goes to weight in part because the Defendant "markets [a] proposed alternative [which] underscores" the conclusion that testing of an alternative design was not needed); *Schuring*, 244 F. Supp. 3d at 731 (holding failure to test alternative designs goes to weight when the expert's "background, the relative simplicity of the safety features in question, and his consideration of the facts available to him" render the opinion sufficiently reliable for admission);

---

expert did not rule out any serious alternative causes of the accident. *Id.* at 875–77.

*Hasan v. Cottrell, Inc.*, No. 10 C 5534, 2014 WL 4124254, at *4 (N.D. Ill. Aug. 21, 2014) (holding an expert's "understanding of how certain alternatives have been used in practice provides a minimally sufficient foundation" for an opinion concerning alternative designs without testing and insufficiency in knowledge of alternative designs goes to weight). Therefore, the Court will not exclude Dr. Lanning's alternative-design opinions.

  **iv.**   **Warning Opinions**

Defendant also argues that Dr. Lanning's opinions on warnings are unreliable because they are contrary to the record.[4] Specifically, Defendant argues the record establishes that Bolden knew how to remove the lid properly by pressing the release button. Defendant's argument is based on a mistaken premise. Plaintiff does not allege that Bolden was injured because she did not know how to remove the lid under ordinary circumstances but instead that she was unable to remove the lid normally due to the jam which stopped the handle from raising fully and that no warnings were provided regarding risks associated with the lid jamming. (ECF No. 48-1 at 12, 18–19.) Therefore, the Court will not exclude Dr. Lanning's opinions on this basis.

  **D.**   **Assistance to the Trier of Fact**

An expert's opinion is relevant when it "will assist the trier of fact with its analysis of any of the issues involved in the case." *Ford*, 215 F.3d at 718. Essentially, the expert "must have something useful to say about the particular circumstances at issue." *Downing v. Abbott Labs.*, 48 F.4th 793, 810 (7th Cir. 2022) (quotations omitted). Testimony is relevant so long as "it has any tendency to make a fact more or less probable than it would otherwise be" and that fact is of consequence under the substantive state law. *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 767–68

---

4 The Court does not consider Plaintiff to have waived her argument as to this point when she raised it in response to Defendant's motion for summary judgment. (ECF No. 79 at 11–12.)

(7th Cir. 2013) (citing Fed R. Evid. 401).

Defendant argues Dr. Lanning's causation opinion is irrelevant because his test did not perfectly replicate Bolden's experience. Specifically, it argues that Bolden testified that when she pressed the release button the lid released about an inch, and Dr. Lanning only observed the lid jamming fully. The Court disagrees and holds that Dr. Lanning's opinion still would assist the trier of fact because his test replicated the core of Bolden's experience: the lid not releasing fully through the use of the release button, requiring removal of the lid through other means. At most, Dr. Lanning's failure to perfectly replicate the conditions Bolden experienced is a "vulnerable assumption," "but this arguable limitation can . . . be addressed through cross examination" and his conclusion is nonetheless relevant. *Stollings*, 725 F.3d at 768 (holding expert's focus on the social cost of table saws generally and not the defendant's table saw specifically does not undermine relevance and is better left for cross examination).

Therefore, the Court holds that Dr. Lanning is qualified, he has employed a reliable methodology, and his opinions are relevant, and accordingly denies Defendant's motion to exclude Dr. Lanning.

## Defendant's Motion for Summary Judgment

Defendant has also moved for summary judgment on Plaintiff's claims. The Court denies Defendant's motion except as to Plaintiff's manufacturing defect claim.

### A. Judicial Estoppel

Defendant argues that Bolden and Haigler should be estopped from recovering funds in excess of the amount that Bolden owes to creditors due to Bolden's alleged intentional deceit in listing the value of her claim relating to this suit as $0 on her bankruptcy petition. Seventh Circuit law forecloses Defendant's argument. For instance, in an analogous case, the Seventh Circuit held

14

no cap should apply to the recovery of the Trustee due to a debtor's deceit. *Metrou v. M.A. Mortenson Co.*, 781 F.3d 357, 360 (7th Cir. 2015) ("Whether or not Matichak should have disclosed the claim in the bankruptcy does not matter to a suit maintained by the Trustee, who is not even arguably culpable for any misconduct. Reducing the stakes in the tort suit could injure the creditors along with the debtor.") The Seventh Circuit also held that the determination of whether a debtor attempted "to hide the claim in bankruptcy is a question more appropriately addressed to the bankruptcy judge, who can decide (if the Trustee prevails in this tort suit) what disposition to make of any proceeds that remain after paying counsel and the creditors." *Id.* at 360.[5] As such, Defendant's motion for summary judgment on the grounds of judicial estoppel is denied.[6]

### B. Strict-Liability Design Defect Claim

Defendant moves for summary judgment on Plaintiff's strict-liability design defect claim only to the extent it prevails on its motion to exclude Dr. Lanning. Because the Court declines to exclude the opinions of Dr. Lanning and Defendant has put forward no other basis for summary judgment, the Court denies Defendant's motion for summary judgment as to Plaintiff's strict-liability design defect claim.

### C. Failure-to-Warn Claim

Defendant argues that Plaintiff's failure-to-warn claim fails because the food processor's

---

5 Allowing the bankruptcy court to decide the issue of a debtor's intent makes sense when the Trustee retains the suit for the benefit of creditors because, as Defendant has acknowledged, a debtor becomes unable to put forward facts in their defense after they are no longer a party. Fed. R. Civ. P. 56 (c)(1) (allowing a *party* to assert that facts are disputed); LR 56.1 (allowing a *party* to respond to facts and provide additional facts).

6 Further, if the Court reached the merits, Defendant has submitted an audio recording of a call prior to the discharge that establishes Bolden made it clear (1) there was an attorney handling this matter for her, (2) she had a "case" against the Defendant, and (3) she was asserting personal injuries in this matter. (ECF No. 53-13 at 5:30–6:40.) This creates a material issue of fact as to Bolden's intent and would separately defeat summary judgment. *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 547 (7th Cir. 2014).

15

danger was open and obvious and because the purportedly inadequate warnings did not proximately cause Bolden's injury. The Court disagrees and denies Defendant's motion for summary judgment.

### i. Open and Obvious

In a products liability case "[n]o duty to warn exists where the danger is apparent or open and obvious." *Sollami v. Eaton*, 772 N.E.2d 215, 219 (Ill. 2002). The same doctrine exists for premises liability and appears to be largely the same. *Id.* "The open and obvious doctrine is an objective inquiry that considers whether a reasonable person with the plaintiff's knowledge of the situation would appreciate the risk and know to avoid the hazard." *Burns v. Sherwin-Williams Co.*, 78 F.4th 364, 371 (7th Cir. 2023). Summary judgment should be denied when there is insufficient evidence for a court to conclude that "a reasonable person would indisputably appreciate the risk posed[.]" *Braxton v. Menard Inc.*, No. 21 CV 02198, 2024 WL 3251377, at *5 (N.D. Ill. July 1, 2024).

Here, the Court is not convinced that, as a matter of law, a reasonable person would appreciate the risk posed by the food processor. The cases the Court has identified finding a condition to be open and obvious as a matter of law involve less attenuated facts than those here. *See, e.g.*, *Dunn v. Menard, Inc.*, 880 F.3d 899, 907 (7th Cir. 2018) (holding, in a premises liability case, that standing near "a sixteen-foot stack of "obviously unstable insulation" was an open and obvious risk); *Sollami*, 772 N.E.2d at 222 (holding the plaintiff intended to jump higher on a trampoline and falling from a great height is an open and obvious risk); *Gutterman v. Target Corp.*, 242 F. Supp. 3d 695, 703 (N.D. Ill. 2017) (holding riding a skateboard inside of a Target creates an open and obvious risk of a fall). Here, it is not indisputably clear that an ordinary person would appreciate the risk in attempting to remove the food-processor lid. While an ordinary person would

16

understand that a blade is sharp, it is less clear that they would understand the intricacies of a jammed lid and whether removing a jammed lid would eject the blade from the food processor. Accordingly, the Court leaves this determination to the jury and denies Defendant's motion for summary judgment on this basis.

### ii. Proximate Cause

Defendant next argues that Plaintiff's failure-to-warn claim fails because she cannot establish that the alleged failure to warn proximately caused her injury. Specifically, Defendant argues that the evidence shows that Bolden would not have heeded an additional warning because she knew the correct way to remove the lid by pressing the lid release button, and thus any additional warning to use the lid release button would not have been heeded. This argument misstates Plaintiff's position for the reasons discussed above with respect to Defendant's motion to exclude Dr. Lanning's warnings opinions as unreliable on the same basis.[7] Accordingly, the Court denies Defendant's motion for summary judgment as to Plaintiff's failure-to-warn claim.

### D. Negligent Design Claim

In addition, Defendant argues that Plaintiff's negligent design claim fails as a matter of law in the absence of expert testimony as to the standard of care in the industry and Defendant's alleged deviation from that standard. Defendant's argument fails because it is not necessary to establish the industry standard of care in a negligent design case. *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1156 (Ill. 2011) (explaining that a negligent design claim does not require proof of deviation from an industry standard of care and that even adherence to all industry standards does not require judgment as a matter of law); *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 264 (Ill. 2007) ("In

---

[7] To the extent Defendant is arguing that there is no evidence that Bolden would have read and heeded additional warnings relating to jamming, a material issue of fact exists because Bolden did attempt to read the existing instructions for the food processor. (ECF No. 53-5 at 47:4–18.)

a negligent-design case, the key question is whether the manufacturer exercised reasonable care in designing the product, which comes down to whether in the exercise of ordinary care the manufacturer should have foreseen that the design would be hazardous to someone." (quotations omitted)); *Johnson v. Edward Orton, Jr. Ceramic Found.*, 71 F.4th 601, 610 (7th Cir. 2023) (same). As such, the Court denies Defendant's motion with respect to Plaintiff's negligent design claim.

### E. Manufacturing Defect Claim

Plaintiff admits her complaint sounds in design defect and she has no evidence to support a manufacturing defect claim. (ECF No. 79 at 15.) Therefore, the Court grants summary judgment to Defendant as to Plaintiff's manufacturing defect theories of recovery.

### F. Bolden's Future Medical Expenses

Lastly, Defendant moves for summary judgment on the basis that Plaintiff cannot recover for Bolden's future medical expenses without expert testimony. The Court denies Defendant's motion because "expert testimony is not necessary to prove future medical expenses." *Rainey v. Taylor*, 941 F.3d 243, 253 (7th Cir. 2019) (citing *Rainey v. City of Salem*, 568 N.E.2d 463, 469 (Ill. App. 1991)).

### Conclusion

For the reasons stated above, Defendant's motion to exclude Dr. Lanning is denied. [47] Defendant's motion for summary judgment is granted in part and denied in part. [43] The Court grants Defendant's motions to seal. [50] [54]

**SO ORDERED.**                             ENTERED: March 3, 2025

_____
HON. JORGE ALONSO

**United States District Judge**